---

(Hamilton County Common Pleas, 1900.)
AUGUST BRUNNER v. THE MUNICIPAL CORPORATION OF HARRISON, O.

---

A statute furnishes itself the best means of its own exposition; and if the intent of the act can be readily ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids of construction.

A provision in a village ordinance requiring transient dealers to take out a license before doing business in the village, if standing by itself, would be unconstitutional (Flatau v. Mansfield, 14 O. C. C., 592),but where such provision is only a part of a general police regulation expressed by the whole ordinance, it is valid.

It is because the business of transient dealers calls for police supervision and regulation that justifies such ordinance and license, and the municipality may charge a reasonable amount to defray the expense of such supervision and regulation.

---

JELKE, J.

The plaintiff in error was convicted before the Police Justice of the village of Harrison, Ohio, for the violation of section 2, and section 4, of Ordinance 106 of said village.

Ordinance 106 reads as follows:

"An ordinance imposing a license upon hawkers, peddlers, transient dealers, persons who temporarily open stores or places for the sale of goods, wares or merchandise, and all persons who shall, on the street or travelling from place to place about the village, sell, bargain to sell, or solicit orders for goods, wares or merchandise by retail, and imposing penalties for violation of provisions.

"Be it ordained by the council of the village of Harrison Hamilton County, Ohio.

"Section 1. That all persons who shall, carrying their goods with them on their persons or in some vehicle, on the streets, sidewalks, public market spaces or commons, or while travelling, from place to place about said village, sell, bargain to sell, or offer for sale at retail any goods, wares or merchandise, shall be held and deemed to be hawkers and peddlers, and it shall be unlawful for any such hawkers or peddlers to play his vocation as above defined within the limits of said village without having first obtained a license therefor from the mayor of said village.

"License shall be granted to each hawker and peddler who does not transport his goods in a vehicle, for the sum of fifty (0.50) cents per day, or five ($5.00) dollars per year, at the option of the applicant, and all hawkers and peddlers who use a wagon or other vehicle shall pay one ($1.00) dollar per day, or twenty five ( $25.00) dollars per year, at the option of the applicant; but nothing in this ordinance shall be construed to apply to goods, wares or merchandise located in another state to be transported into this state under a contract of sale made here or elsewhere so long as they remain in the original packages.

"Section 2. That every person who comes into this village temporarily in order to represent some business located elsewhere, and to solicit orders for goods either at wholesale or retail, or to sell any such goods on commissoan, shall be held and deemed to be a trans-

ient dealer; and it shall be unlawful for any such transient dealer as above defined to sell, offer to sell, bargain to sell or solicit orders for goods at wholesale or retail within said village without having first obtained a license from the mayor thereof; the license fees required of such transient dealers shall be the same as those required of hawkers and peddlers in the preceding section; and every transient dealer who uses a wagon or other vehicle to transport or deliver goods shall pay a license fee of one ($1.00) dollar per day or twenty-five ($25.00) dollars per year, at the option of the applicant, but transient dealers who sell at wholesale only may be licensed for fifty (0.50) cents per day or ten ($10.00) dollars per year, at the option of the applicant.

"This section shall not apply to the transations of commercial drummers who represent wholesale houses shipping goods by rail.

"Section 3. That it shall be unlawful for any person within the limits of said village to open temporarily a store or place for the sale of goods, wares or merchandise, without first having obtained a license from the mayor thereof, and such license shall be granted for two ($2.00) dollars per week or any fraction thereof.

"The fact hat any person who may open such a store or place of business in said village does not lease the premises or place occupied for more than six months shall be deemed prima facie evidence that he has opened such store or place of ·business tempo rarily.

"Section 4. That it shall be unlawful for any person while on the street or travelling from place to place about said village, to sell, bargain to sell or solicit orders for goods, wares or merchandise by retail without having first obtained a license therefor from the mayor of said village.

"This section is intended to apply to all persons who do not carry with them the identical goods sold, or bargained to be sold, to be delivered at the time of sale, but who solicit orders for similar or other goods for future delivery. All such persons shall pay a license fee equal to that required of hawkers or peddlers, and all who transprot or deliver any such goods in any vehicle drawn by a horse or horses or other animal of equine species, shall pay a license fee of one ($1.00) dollar per day, or twenty-five ($25.00) dollars for each year, at the option of the applicant; but this section shall not apply to transient dealers who have procured a license under section two (2) of this ordinance authorizing them to sell at retail; but it shall apply to the agent or driver of any such transient dealers who has no license to sell at retail.

'No license issued under this ordinance shall be transferable, nor shall it be used by any person other than the one named in the license.

"Section 5. Every person found guilty of violating any of the preceding sections of this ordinance, shall upon conviction before the Mayor, or other proper authority, pay a fine not exceeding twenty ($20.00) dollars nor less than one ($1.00) dollar with the costs of prosecution.

"All license fees and fines collected by the mayor, under this ordinance shall be paid to the treasurer of the village, and be by him credited to the street and alley fund.

"Section 6. That ordinance No. 36, passed September 10, 1889, entitled 'An ordinance to license peddlers and hawkers, and imposing penalties for selling without license, be and the same is hereby repealed.

"Secton 7. This ordinance shall take effect and be in force from and after the earliest period allowed by law.

"Done at he Council Chamber, Harrison, Ohio, June 6, 1889.

"L. C. HAWK,
"Pres. Council pro tem.
"L. A. Cook, Clerk."

Proceedings in error have been regularly prosecuted from such conviction to this court on the ground that plaintiff in error was not charged with or convicted of an offense under a valid and subsisting law of the state of Ohio, and that so much of said ordinance as refers to transient dealers and was made applicable to plaintiff in error was contrary to the Bill or Rights and Constitution of the state of Ohio.

The words "transient dealers" are used in two sections of the Revised Statutes, R. S. 2670-1 and R. S., 2669b, R. S., 2670-1 has been distinctly held to be unconstitutional by the fifth circuit court in the sace of Flatau v. Village of Mansfield, 14 O. C. C. 592-598, Sept. 1897. It would seem that the language of the court would be equally applicable to R. S. 2669b, but as they have not specifically said so, we will not extend their opinion.

R. S. 2669, b, was passed April 1893, 90 O. L. 311, and is as follows:

"Section 2669, b,. (Further licensing powers of council.) The council of any village or city may provide by ordinance for licensing bill posters, transient dealers, persons who temporarily open stores or places for the sale of goods, wares or merchandise, and all persons who shall on the street, or travelling from place to place about such village or cities, sell, bargain to sell, or solicit orders for goods, wares or merchandise by retail. The grant-

ing of such license shall be controlled by the provisions of section 2669 (90 v. 311.)"

It is said that it was by virtue of this statute that the ordinance in question was passed.

A nisi prius court should not lightly or unnecessarily pass upon the validty of an act of the general assembly; on the contrary it is its duty to assume the same to be good until the logic of the particular case unavoidably presents that issue.   I can well see how a statute, or parts of a statute, can be unconstitutionally applied and interpreted by municipal legislation, when other interpretation and application would be valid and proper.   In considering this it is best to look to the whole law, the section of the statute, the ordinance and the entire subject matter.

It is the interpretation of this statute by this ordinance and the application made of it by this municipal legislation which we will here consider.

It is very plain what the person drafting this ordinance has done.   Taking the words "transient dealers" from the statute, he has turned to Hoar and Bemis on Municipal Police Ordinances, p. 264 Par. 271, adopted the definition therein and incorporated the same into the ordinance.     ·

"The class of dealers who come into a locality temporarily, in order to represent some business located elsewhere and to solicit orders or sell on commission, are, in distinction from peddlers, known as transient dealers. Ordinances imposing a license tax upon them must be clearly authorized     The fact that they do not carry with them the goods sold has been considered as an additional feature distinguishing them from peddlers.   Regulations demanding license fees from transient dealers are not regulations of commerce."

An examination of the text and notes shows that these are the words of the author, and have no authority of adjudication behind them.    By discrimination they seek to establish a class of traders different from travelling merchants, commercial travelers, drummers, peddlers, etc., and it seems that they have been successful in pointing out a particular class who might not come, strictly speaking, under any of said denominations.

What, then, is the differentiating characteristic of this case?

If it is time, and section two of the ordinance stood by itself, manifestly it would be unconstitutional under the holding in Flatau v. Village of Mansfield, 14 O. C. C., 5c2.

If it is that the goods sold come from outside the corporate limits of the village of Harrison or belong to a non-resident, then section two of the ordinance would be unconstitutonal under the holding in Sipe v. Murphy, 49

O. S., 536-547-548; Ex parte Frank, 52 California, 606-610; Graffty v. City of Rushville, 107 Indiana.

The phrase "in order to represent some business located elsewhere" is new and has not been dealt with in the cases, but if by "business" is meant "goods" or "persons," or a combination of goods and persons, the case of Sipe v. Murphy, Graffty v. Rushville and Ex parte Frank would apply equally.

There is another differentiating fact mentioned by Hoar & Bemis, "the fact that they do not carry with them the goods sold has been considered as an additional feature distinguishing them from peddlers."    Now this characteristic makes a particular class, and if section two stands by itself, specializes these tradesmen and discriminate against them, so that this section would be unconstitutional for the same reasons as the above cases.

But here our attention is directed beyond section two to the whole ordinance and especially to sections one and four, and we see that the license upon "transient dealers" is but part of a larger general scheme putting everybody under license who is pursuing a certain line of business or conduct in the municipality.   "By such a reading and consideration of a statute its object or general intent is sought for, and the consistent auxiliary effect of each individual part.'     Sutherland on Statutory Constructon, Par. 215.

"It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it.    When the subject matter is once clearly ascertained and its general intent, a key is found to all its intricacies;— general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent.    When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention."

"The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction."

The presumption is that the lawmaker has a definite purpose in every enactment, and has adapted and formulated the subsidiary provisions in harmony with that purpose; that these are needful to accomplish it; and that, if they have the intended effect, they will. at least, conduce to effectuate it.    That purpose is an implied limitation on the sense of general terms, and a touchstone for the expansion

of narrower terms. This intention affords a key to the sense and scope of minor provisions. From this assumption proceeds the general rule that the cardinal purpose or intent of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious. They are to be brought into harmony if possible, and so construed that no clause, sentence or word shall be void, superfluous or insignificant." Sutherland on Statutory Construction, sections 218, 219, 240.

See also Sedgwick on the Construction of Statutory and Constitutional Law, pp. 199-201.

Hawking and peddling have always been deemed proper subjects for police surveillance and license, and when the license is put upon these pursuits irrespective of persons and goods, their origin, residence or location, such license has generally been held to be a constitutional exercise of the police power of government. Where "transient dealers" are doing all and more than hawkers and peddlers are doing, shall they by the device of dividing their business methods into two acts performed at diverse times, to-wit: Offering and delivering, put themselves out from under that class and by forming a class of their own escape the liabilities and duties of hawkers and peddlers? Or, rather, does not their method of business engage police watchfulness to a double degree? If you adopt this latter view, then section two instead of being a special provision for a particular class, putting "transient dealers" under a peculiar ban, becomes an enlarging and perfecting of the general applicability of the whole ordinance, so that all shall be subject to the same restrictions, be they residents of the village of Harrison, or non-residents coming from parts unknown, be their presence in said village a permanent residence or but a temporary sojourn, be their merchandise located in or produced in Harrison, or located or coming from beyond the seas, whether the seller carries his ·wares for delivery simultaneously with the bargain, or reserves the same for subsequent delivery.

Taking section two by itself I would say, unhesitatingly that it is unconstitutional and void, but when I consider it a part of a general scheme of legislation expressed by the whole ordinance, I incline to the opposite opinion. .

To declare section two inoperative and void would be to establish "transient dealers" as a separate class enjoying extraordinary privilege and exemption from amenability to police regulation and ordinance.

There is a part of section two of this ordinance which presents difficulty, that is the first part down to the semicolon which defines a "transient dealer."

"Any provision in a statute which declares its meaning or purpose is authoritative. Whether it relates to the object of a whole act, or of a single section, or of a word, it is a declaration having the force of law. It is binding on the courts, though otherwise they would have understood the language to mean something different." Sutherland on Statutory Construction, section 402 p. 514.), and again: "When, however, the clause is employed, as it often is, to make particular words mean something different or more than they naturally and ordinarily signify, it should be construed strictly". (Ib. p. 515.)

While this definition would limit the scope of the term, yet when considered as part of the whole ordinance, such as it does cover are brought under the general legislative scheme.

The affidavit describes the things done and brings the plaintiff in error within the provisions of the ordinance.

"The State of Ohio, ׳County of Hamilton, Village of Harrison, ss:
Complaint No. 16.

"Before me, Frank Bowles, Police Justice of said municipal corporation, personally came Joseph Binder, who being duly sworn saith that on or about the 22 day of June, A. D. 1899, at the municipal corporation and county aforesaid one August Brunner came into said village temporarily in order to represent a business located elsewhere, to-wit, at Cincinnati, Ohio, and to solicit orders for goods at retail, and did on said day and date within said village unlawfully solicit orders for, and bargain to sell goods at retail without having first obtained a license therefor from the mayor of said village, contrary to the form of ordinance No. 106, section 2 of the ordinances of said village.

"This deponent further says that on or about said day and date and at said municipal corporation and county aforesaid said August Brunner did unlawfully on the street and travelling from place to place about said village bargain to sell and solicit orders for goods, wares and merchandise by retail without having first obtained a license therefor from the mayor of said village under section two (2) or section four (4) of ordinance No. 106, contrary to he form of the ordinance No. 106 of said village in such case made and provided, and further this deponent saith not.

             Joseph Binder, Marshall

Sworn to and subscribed before me this 22nd of June A. D. 1899,

             Frank Bowles, Police Justice.

The argument in the brief of counsel for defendant in error, and the opinion on page

506 of the 107th Indiana, that resident dealers contribute by taxation to municipal support and should not be subjected to competition from transient dealers who do not, and that such license fee tends to equalize and make things fairer, does not appeal to me. It seems to me to be a popular and specious argument rather than one sound in law.

The license power as a branch of the police power of the state is organically distinct from the taxing power.

"A sum demanded as a license if used to supply the public treasury, is a tax on the employment and void." Mays v. Cincinnati, 1 O. S., 268.

It is because the thing done calls for police supervision and regulation that justifies the ordinance and license, and the municipality may charge a reasonable amount to defray the expense of such supervision and regulation. It is the aspect of section two being but part of a general police regulation which induces me to sustain it.

I do not give much consideration to aspects of this case touching inter-state commerce, for two reasons:

FIRST: There is practically no difference of opinion between counsel on both sides of the case and the court as to the law, if the facts clearly presented a case of inter-state commerce.

If, for instance, it appeared that the business transacted was between a citizen of the state of Ohio and a citizen of a foreign state, and the goods were shipped by the citizen of the foreign state in a specific original package to the citizens of Harrison, Ohio, then a clear case of inter-state commerce would be presented, and the regulation of which having been committed by the Federal Constitution to the Congress of the United States, the ordinance of the village of Harrison could not affect it and would be inoperative.

SECOND: While this aspect of the case has been presented and argued to this court, the case as tried below does not seem to have been framed to clearly raise this issue, and the dispute between counsel is rather, what does the record show to be the facts in this regard, than, what is the law.

If the point was presented, the judgment of the magistrate involved a finding upon this issue, and his finding will not be set aside unless clearly against the weight of the evidence. See Bates' Digest on "Weight and Sufficiency of Evidence", Vol. 1, p. 390, 151-181.

Judgment affirmed.

Ben. B. Dale, for plaintiff in error.

George Goodheart and Wade Cushing, for Village of Harrison.