**CAYGILL, Appellant,**

v.

**JABLONSKI, Appellee.**

[Cite as *Caygill v. Jablonski* (1992), 78 Ohio App.3d 807.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–364.

Decided Sept. 30, 1992.

808

*Kalniz, Iorio & Feldstein* and *Dennis M. Keil,* for appellant.

*Glenn E. Wasielewski,* for appellee.

ABOOD, Judge.

This is an appeal from a summary judgment granted by the Lucas County Court of Common Pleas in favor of defendant-appellee, Patrick Jablonski ("appellee").

Plaintiff-appellant, John D. Caygill ("appellant"), sets forth one assignment of error:

"The trial court erred in granting defendant's motion for summary judgment by misapplying the law to the facts of this case and reaching the conclusion that O.R.C. 4123.741 provided absolute immunity from suit for the appellee."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. On July 24, 1989, both appellant and appellee were employed by the city of Sylvania, Division of Streets, as street crew workers. On that day they had finished their work duties early and were waiting in the Sylvania City Garage for 3:00 p.m., the time their workday ended, so that they could leave. While they were waiting, appellee, a "temporary employee," became involved in a "pick-up" game of baseball. The game involved the use of a shovel handle as a bat to hit a "ball" of rolled-up rags. Each person playing would take turns batting, pitching and playing the outfield. While appellee was taking a swing during his turn at bat, the shovel handle slipped out of his hands and flew into appellant's forehead. Appellant was not involved in the pick-up game. Thereafter appellant applied for and received workers' compensation benefits from the Ohio Bureau of Workers' Compensation for the injuries he sustained from the bat hitting him. On November 2, 1990, appellant filed a complaint in the Lucas County Court of Common Pleas against appellee based on common-law negligence. On January 23, 1991, appellee filed his answer in which he alleged as a defense that appellant's claims were barred by the immunity granted to coemployees under R.C. 4123.741 and, on August 23, 1991, he filed a motion for summary judgment. On September 3, 1991, appellant filed his memorandum in opposition to appellee's motion for summary judgment. The record that was before the trial court on summary judgment consists of the pleadings and depositions of appellant and appellee.

Appellee testified at his deposition that his job duties did not include playing the game but that he and others had played the game on ten to fifteen different occasions, that one of the supervisors had previously participated in the game and that no supervisor had ever " * * * once said, no, don't play."

On October 7, 1991, the trial court filed its opinion and judgment entry in which it found appellee to be immune from suit and granted summary judgment to appellee. In so finding, the trial court analyzed the statute in part as follows:

"In this case both Plaintiff and Defendant were on the employer's property and therefore within the 'zone of employment.' Further both Plaintiff and Defendant were there as employees during their regular working hours.

"Even though the Defendant was playing ball, which was not part of the Defendant's job description, he is still immune from suit by the Plaintiff, since O.R.C. section 4123.741 makes the Defendant's activities irrelevant so long as they are not criminal or intended to cause harm.

"It is important to note that O.R.C. section 4123.01 defines 'Employee' as 'Every person in the service of the state, or of any county, municipal corporation * * *.'

"The term 'in the service of' is a very broad term, so that the term employee can be defined very broadly. This broad definition of employee status is to the benefit of all employees and is therefore good public policy.

"In this case, even though the Defendant was not engaged in activity within his job description, based on other factors he was still in the service of his employer and therefore qualifies as an employee for purposes of O.R.C. section 4123.741."

It is from this judgment that appellant brings this appeal.

In support of his sole assignment of error, appellant argues that appellee was not an "employee" of their mutual employer at the time appellee caused injury to him because "[t]he conduct of the Appellee at the time of the accident * * * is clearly *not* rendering benefit to his employer * * *."

Appellee responds that " * * * one would have to completely disregard the language of R.C. 4123.741 (if not just its plain meaning) to conclude that the statute does not bar a negligence claim against the Appellee as Appellant asserts"; that the trial court's interpretation of the statute is consistent with that of other Ohio courts; and that appellant is estopped from denying that his injury was incurred in the course of his employment " * * * regardless of considerations of the interpretation of R.C. 4123.741."

Appellant replies that he " * * * has never denied that he sustained his injury within the course and scope of his employment. Appellant's argument

has always been that the Appellee had made a significant detour from the course and scope of his employment and therefore should be precluded from shielding himself from liability with O.R.C. Section 4123.741."

Civ.R. 56(C) provides, in pertinent part, that:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The issue presented by appellant's sole assignment of error is whether a genuine issue of material fact remains as to appellee's status as an "employee" at the time of appellant's injury.

R.C. 4123.741 provides, in pertinent part, that:

"No employee * * * shall be liable to respond in damages at common law * * * for any injury * * * received * * * by any other employee * * * in the course of and arising out of the latter employee's employment * * * on the condition that such injury * * * is found to be compensable * * *."

In *Proctor v. Ford Motor Co.* (1973), 36 Ohio St.2d 3, 65 O.O.2d 32, 302 N.E.2d 580, paragraph one of the syllabus, the Supreme Court of Ohio held that:

"To qualify for statutory immunity from tort liability under R.C. 4123.741, a person must be an 'employee' as defined in R.C. 4123.01(A)(2)."

In this case, since appellee's employer is the city of Sylvania, in order to qualify for statutory immunity under R.C. 4123.741, he must be an "employee" as defined in R.C. 4123.01(A)(1)(a). That section defines "employee" in relevant part as "[e]very person *in the service* of * * * any * * * municipal corporation * * * under any appointment or contract of hire * * *." (Emphasis added).

A preliminary issue for this court to determine is whether a tortfeasor, who, while under a contract of hire with the injured person's employer, causes injury while on the employer's premises and during his regular working hours but while engaged in horseplay disconnected from his employ-

ment, is a " * * * person in the service of * * * " such employer for purposes of qualifying for statutory immunity from tort liability under R.C. 4123.741.

In *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 214, 396 N.E.2d 770, 772, the Supreme Court of Ohio stated:

"It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101 [65 O.O.2d 296], 304 N.E.2d 378. Where the court is confronted with a statutory ambiguity, the rules of statutory interpretation may be invoked for the purpose of ascertaining the true intent of the General Assembly. See *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45 [59 O.O. 65], 133 N.E.2d 780."

■ In determining the meaning of words and phrases in a statute, when a term has acquired a technical meaning by legislative definition, court decision or otherwise, it shall be construed accordingly and no further interpretation is necessary. R.C. 1.42; *Woman's Bowling Congress v. Porterfield* (1971), 25 Ohio St.2d 271, 275, 54 O.O.2d 383, 385, 267 N.E.2d 781, 783; *State ex rel. Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 412–413, 124 N.E. 232, 234; *State ex rel. Belford v. Hueston* (1886), 44 Ohio St. 1, 5–6, 4 N.E. 471, 473–474. If the statutory definition itself is ambiguous, however, legislative intent must be examined to determine its meaning. See, *e.g., Brunner v. Harrison* (1900), 11 Ohio Dec. 446, 8 Ohio N.P. 303, reversed on other grounds (1902), 1 Ohio C.C. (N.S.) 111, 15 Ohio C.D. 247.

When a term has not been defined by the legislative enactment in which it appears, by court decision or otherwise, it will be given its common, ordinary and accepted meaning in the context in which it is used. R.C. 1.42; *Baker v. Powhatan Mining Co.* (1946), 146 Ohio St. 600, 606, 33 O.O. 84, 87, 67 N.E.2d 714, 717.

■ If the generally accepted meaning of a term is clearly repugnant to the intention of the legislature, or if there is more than one generally accepted meaning of the term, such term " * * * may be subject to judicial interpretation * * *." *Wadsworth v. Dambach* (1954), 99 Ohio App. 269, 273, 59 O.O. 47, 49, 133 N.E.2d 158, 162; *State ex rel. Belford, supra,* 44 Ohio St. at 5, 4 N.E. at 473; 85 Ohio Jurisprudence 3d (1988) 257, Statutes, Section 243.

R.C. 4123.741 clearly provides immunity to a tortfeasor "employee" from liability for damages resulting from injuries received in the course of and arising out of the injured employee's employment. It is also clear that this immunity is provided only to "employees" who are "in the service of" their employer. The Act, however, does not define the term "in the service of." Since R.C. 4123.741 is silent as to the work-connectedness of the tortfeasor's

action at the time he causes the injury, it is unclear whether such silence is meant to (a) grant immunity regardless of whether the tortfeasor was engaged in activity connected with *his* employment at the time of the injury, or (b) whether the language as to the work-connectedness of the injury to the injured employee is merely a recitation of the definition of injury set forth in R.C. 4123.01(C). On the one hand, the General Assembly could have clearly provided that both employees must be engaged in work-connected pursuits for immunity to attach by simply stating that there is no liability for injuries received "in the course of and arising out of *both* employees' employment." On the other hand, the General Assembly could have made it clear that the language, "in the course of and arising out of the *latter* [injured] employee's employment," (emphasis added) is not merely a restatement of the statutory definition of injury, but means that the tortfeasor could be an "employee" even though engaged in pursuits disconnected from his employment. This could have been accomplished simply by adding the phrase, " * * * whether or not the injury was caused by the former employee in the course of or arising out of his employment * * *."

No Ohio court has directly addressed the issue of whether a tortfeasor qualifies for statutory immunity from tort liability under R.C. 4123.741 when, at the time of causing the injury, he was engaged in pursuits disconnected from his employment. Those courts that have dealt with the issue of immunity under R.C. 4123.741 have done so in cases that involve employees who injure coworkers while *both* are within their employment. In those cases, the courts have either assumed the status of the tortfeasor to be that of an "employee" because such status was admitted, stipulated to or not an issue in the case, *Kaiser v. Strall* (1983), 5 Ohio St.3d 91, 5 OBR 143, 449 N.E.2d 1; *Bussell v. Mattin* (1981), 3 Ohio App.3d 339, 3 OBR 395, 445 N.E.2d 696; *Williams v. Ashland Chem. Co.* (1976), 52 Ohio App.2d 81, 84–85, 6 O.O.3d 56, 57–58, 368 N.E.2d 304, 307; addressed the issue in a different context, *Proctor, supra; Williams, supra;* or have stated in *obiter dictum* that the tortfeasor, as well as the injured person, must be in the course of his employment to qualify for statutory immunity under R.C. 4123.741. *Couch v. Thomas* (1985), 26 Ohio App.3d 55, 58, 26 OBR 228, 231, 497 N.E.2d 1372, 1375 (disapproved on other grounds in *Eberly v. A–P Controls, Inc.* [1991], 61 Ohio St.3d 27, 34, 572 N.E.2d 633, 638); *Puckett v. Miller* (App.1980), 19 O.O.3d 349, 350–351; see, also, *State Farm Mut. Auto. Ins. Co. v. Webb* (1990) 54 Ohio St.3d 61, 63, 562 N.E.2d 132, 134.

The word "service" is defined, in pertinent part, in Webster's Ninth New Collegiate Dictionary (1989) 1076, as " * * * 1 a: the occupation or function of serving (in active) b: employment as a servant (entered his) 2a: the work performed by one that serves (gives good) b: HELP, USE, BENEFIT (be of—

to them) * * *." It is readily apparent that there are at least two ordinary meanings of the word "service," one which indicates general employment, the other the actual performance of work. The common usage, therefore, does not resolve but begs the issue in this case.

Upon consideration of the foregoing, this court finds preliminarily that R.C. 4123.741 is ambiguous in its failure to define the phrase "in the service of" and, therefore, the meaning of that phrase is subject to judicial interpretation in accordance with the intent of the legislature.

The General Assembly has established certain basic guidelines to assist in determining legislative intent. R.C. 1.49 provides:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

The object sought to be attained by the Ohio workers' compensation system is the creation of a trust fund " * * * to be administered for the benefit of workmen who suffer injury * * *." *Indus. Comm. v. Drake* (1921), 103 Ohio St. 628, 635, 134 N.E. 465, 467. Its purpose is to partially reimburse the worker " * * * on the theory that such partial reimbursement without expense or delay and without the uncertainties of litigation is more desirable than the opportunity of full compensation for all loss and damages at the hands of courts and juries, with the attendant delays, risks and expenses." *Id.*, 103 Ohio St. at 635, 134 N.E. at 467. The system, therefore, substitutes "economic loss" as the basis for recovery in place of negligence and fault. *Couch v. Thomas* (1985), 26 Ohio App.3d 55, at 58, 26 OBR 228, at 231, 497 N.E.2d 1372, at 1375. In discussing the relationship between the object sought to be attained by the Ohio workers' compensation system and R.C. 4123.741, the court in *Couch* stated that:

"By enacting R.C. 4123.741, the General Assembly extended the theory of economic loss which forms the basis of the Ohio workers' compensation system to employees who injure co-workers while *both* are acting within the scope of their employment. Again, prompt, certain recovery is favored over prolonged litigation which could lead to recovery of either a greater or lesser

amount, or no recovery at all." (Emphasis added.) *Id.* at 58, 26 OBR at 232, 497 N.E.2d at 1375–1376.

More specifically, the justification for the legislative extension of employer immunity to the coemployee is that, like the employer, the coemployee is entitled to *quid pro quo* for the rights he forfeits to a system of workers' compensation; " * * * he, too, is involved in this compromise of rights * * *. [O]ne of the things he is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault." 2A Larson, Law of Workmen's Compensation (1989) 14–115, Section 72.22. In discussing the relationship between the justification for coemployee immunity and the employment status of the coemployee, Larson points out that:

"It must be observed that the immunity attaches to the coemployee *only when the coemployee is acting in the course of his employment.* This is consistent with the justification for the immunity just described, since the coemployee's employment status does not increase the risk of his causing non-industrial injuries to his fellow-workers." (Emphasis added.) *Id.* at 14–117 to 14–126, Section 72.23.

As to the history and circumstances surrounding the enactment of R.C. 4123.741, the Supreme Court of Ohio held, in *Trumbull Cliffs Furnace Co. v. Shachovsky* (1924), 111 Ohio St. 791, 146 N.E. 306, that an injured employee can receive workers' compensation benefits for his injuries and also bring an action at common law against the third party who caused such injuries. In *Landrum v. Middaugh* (1927), 117 Ohio St. 608, 160 N.E. 691, the Supreme Court held, however, that an injured employee who applies for and receives workers' compensation benefits cannot thereafter sue his foreman who caused his injury, when " * * * the negligent act of his foreman [was] performed in the regular course of such foreman's employment * * *." *Id.* at the syllabus. The Supreme Court distinguished that case from *Trumbull Cliffs Furnace Co.* partially on the basis that "[t]he acts which the foreman does in the course of his employment * * * are the acts of the employer * * *." *Id.* at 616, 160 N.E. at 693. Later, in *Gee v. Horvath* (1959), 169 Ohio St. 14, 7 O.O.2d 484, 157 N.E.2d 354, the Supreme Court overruled *Landrum* and held that the employer's statutory immunity from suit did not extend to a coemployee. In so holding, the court stated that:

"If the protection of the present workmen's compensation law of this state is to be expanded to include fellow employees as well as employers, this is a question of legislative policy to be determined by the General Assembly * * *." *Id.* at 18, 7 O.O.2d at 486, 157 N.E.2d at 357.

The General Assembly responded with the passage of R.C. 4123.741, effective October 1, 1963.

As to cases dealing with the same or similar subjects, the rule and rationale pertaining to whether the *injured employee* is entitled to compensation when engaged in horseplay is instructive. Generally, an injury is compensable if the claimant was not the instigator of the horseplay, *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, 130 N.E. 38, but not compensable if the claimant was the instigator, *Indus. Comm v. Bankes* (1934), 127 Ohio St. 517, 189 N.E. 437. In *Bankes*, the Supreme Court set forth the rule of noncompensability in a horseplay situation as follows:

"An injury resulting from sportive play by fellow employees, instigated and engaged in by the injured employee *while on duty*, is not caused by or connected with the workmen's employment within the purview of the Workmen's Compensation Act." (Emphasis added). *Id.* at paragraph three of the syllabus.

This rule is partially derived from the rule that had previously been set forth by the Supreme Court in *Indus. Comm. v. Ahern* (1928), 119 Ohio St. 41, 162 N.E. 272, paragraph three of the syllabus, that:

"An employee who is injured when engaged, *not in the service of an employer*, but in pursuance of the employee's private and personal business, *disconnected with the employment*, is not entitled to compensation under the Workmen's Compensation Law." (Emphasis added.)

In discussing *Ahern*, the Supreme Court in *Bankes* noted that " * * * the accident was incurred *during the time* of the employee's *service*," but that compensation was nevertheless denied because the employee, when injured, was engaged " * * * not *in the service* of the employer, but in pursuance of [his] private personal business, disconnected from the employment * * *." (Emphasis added.) *Id.*, 127 Ohio St. at 521–522, 189 N.E. at 439.[1] The court

---

1. It should be noted, however, that the Supreme Court of Ohio has rejected as a general proposition that compensation is authorized only for an injury sustained by an employee in the performance of some act or in the discharge of some duty in the service of his employer. *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St.2d 18, 23, 39 O.O.2d 11, 14, 225 N.E.2d 241, 245.

It should also be noted that our Supreme Court has at other times indicated that the issue of employee status is distinct from the issue of whether the injury was occasioned in the course of the employee's employment. *Indus. Comm. v. Bateman* (1933), 126 Ohio St. 279, 282, 185 N.E. 50, 51. It would appear that the issue of whether an employee's status is determined by the nature of his pursuits or activities at the time of injury depends upon the circumstances of the case. See, *e.g., Republic–Franklin Ins. Co. v. Amherst* (1990), 50 Ohio St.3d 212, 215, 553 N.E.2d 614, 617; *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 46–47, 544 N.E.2d 887, 891–892; *Marshall v. Aaron* (1984), 15 Ohio St.3d 48,

noted an exception, however, where the employee " * * * is injured by horseplay commonly carried on by the employees with the knowledge and consent or acquiescence of the employer." *Id.* at 522, 189 N.E. at 439. In *Puckett, supra,* 19 O.O.3d at 350–351, that court (after setting forth the law as to when an injured employee can recover compensation for injuries received in a company parking lot) explained that:

"That rationale is equally applicable in determining the meaning of 'in the service of an employer.' If the employee who commits the tort is in a position and engaged in an activity which, were he the injured party, would be 'in the course of his employment' then he is an 'employee' as defined in R.C. § 4123.01 and is absolved of liability by R.C. § 4123.741."

As to the consequences of a particular construction, any construction of R.C. 4123.741 that purports to give immunity to a coemployee tortfeasor engaged in horseplay disconnected from his employment would be inconsistent with the object of workers' compensation law and the concept underlying third-party actions. In every legal mechanism designed to distribute or adjust losses, there are two objects sought to be attained: (1) to make the injured person whole, and (2) to charge the wrongdoer with the loss. 2A Larson, *supra,* 13–231 and 14–1, Sections 70.20 and 71.10. The basis for the latter objective is " * * * a matter of simple ethics and * * * a deterrent to harmful conduct." *Id.* at 13–231. While tort law accomplishes both objectives automatically, compensation law is generally unconcerned with fault. *Id.* at 13–231 to 13–232. The reason for this is that:

" * * * social policy has dispensed with fault concepts to the extent necessary to insure an automatic recovery by the injured workman; *but the disregard of fault goes no further than to accomplish that object,* and, with payment of the workman assured, the quest of the law for the actual wrongdoer may proceed in the usual way." (Emphasis added.) *Id.* at 14–2, Section 71.10.

Accordingly, an injured worker is permitted recovery against a third-party tortfeasor even though the worker has received compensation; the third party, being a stranger to the employment relations governed by workers' compensation law, " * * * should not be in any degree absolved of his normal obligation to pay damages for such an injury." *Id.* When a coemployee is involved in horseplay disconnected from his employment at the time of injury, his relationship to his injured fellow worker more closely resembles that of a stranger than that of a coworker. The law of torts, with its attendant

46–47, 15 OBR 145, 146–147, 472 N.E.2d 335, 337–338; *Faulkner v. Mayfield* (1988), 39 Ohio App.3d 136, 138, 529 N.E.2d 1294, 1296.

allocation of fault, better serves as a deterrent to such conduct than does the workers' compensation system. Otherwise, were this court to construe R.C. 4123.741 to provide immunity to a coemployee tortfeasor engaged in horseplay disconnected from his employment, we would be treating his employment contract as though it were a vaccine providing immunity in a situation that transcends the boundaries of industrial relations.

 Upon consideration of the entire record of proceedings that was before the trial court and the law as set forth above, this court finds: (1) in order for a coemployee tortfeasor to be immune from liability pursuant to R.C. 4123.-741, he must be an "employee" as defined in R.C. 4123.01(A); (2) pursuant to R.C. 4123.01(A)(1)(a), a person who is under a contract of hire with a municipal corporation is an "employee" when he is "in the service of" such employer; (3) an employee who causes an injury on his employer's time and premises while engaged in "horseplay," disconnected from his employment, is not "in the service of" his employer and does not qualify for statutory immunity under R.C. 4123.741, unless his employer consents to or acquiesces in such horseplay; (4) since it is undisputed that appellee was playing the game at the time of appellant's injury and the game was not part of his job duties, and no evidence was presented tending to show any connection between the game and the business of appellee's employer, reasonable minds can only conclude that appellee was engaged in horseplay disconnected from his employment; (5) evidence was submitted to the trial court that appellee and others had played the game on several occasions, that his employer knew of such, that one supervisor had played in the past, and that no supervisor forbade the game; (6) a genuine issue of material fact remains as to whether appellee's employer consented to and/or acquiesced in the playing of the game and, therefore, whether appellee, at the time of injury, was an "employee" entitled to immunity under R.C. 4123.741; and (7) the trial court erred in finding, as a matter of law, that appellee was immune from liability under R.C. 4123.741.

Accordingly, appellant's sole assignment of error is well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas entering summary judgment in favor of appellee is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. Costs assessed against appellee.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.