[Cite as *Sanders v. Fridd*, 2013-Ohio-4338.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Amy K. Sanders,                          :

        Plaintiff-Appellant,             :

v.                                       :                No. 12AP-688
                                            (C.P.C. No. 07CVC-07-9532)

Ryan Fridd et al.,                       :

        Defendants-Appellees.            :                (REGULAR CALENDAR)

---

### D E C I S I O N

**Rendered on September 30, 2013**

---

*Granger Co., L.P.A.*, and *Mark S. Granger*; *Oliver Law Office*, and *Jami S. Oliver*, for appellant.

*Frost, Maddox & Norman Co., LPA*, and *Mark S. Maddox*, for appellee Ryan Fridd.

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1}   Plaintiff-appellant, Amy K. Sanders ("appellant"), appeals from a judgment, pursuant to jury verdict, of the Franklin County Court of Common Pleas in favor of defendant-appellee, Ryan Fridd ("Fridd").  Because (1) the trial court properly instructed the jury on the law of co-worker immunity, (2) the trial court did not err in denying appellant's motion in limine, and (3) the trial court did not abuse its discretion by submitting Fridd's proposed interrogatories to the jury, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   On July 19, 2007, appellant filed a complaint against Fridd, Premierfirst Banc, L.L.C. ("Premierfirst"), and the Ohio Bureau of Workers' Compensation ("BWC"). Appellant alleged that Fridd, her former co-worker at Premierfirst, negligently caused her

injury while he was engaged in horseplay disconnected from his employment, and that his "actions were approved and ratified by * * * Premierfirst." (Complaint, ¶ 10.) Appellant asserted that the BWC held a potential interest in the litigation as a statutory subrogor or subrogee. Fridd answered the complaint, asserting that he was immune from appellant's negligence claim under the laws governing co-worker immunity.

{¶ 3} The events giving rise to the complaint occurred in 2006 when appellant was employed at Premierfirst as a senior loan officer. Fridd was appellant's direct supervisor at Premierfirst and the general manager of the company. Tambra Owens was also a supervisor at Premierfirst, but had less authority than Fridd. Gary Woods was the owner and sole shareholder of Premierfirst.

{¶ 4} On February 28, 2006, appellant, Fridd, and another co-worker, Shane Adams, were present at the Premierfirst office. Appellant stated that she was carrying a loan package to the fax machine when Fridd jumped out of his office, "like to jump out and scare [her], and pushed [her] with both arms." (Tr. Vol. II, 29.) Appellant fell to the ground and sustained a serious fracture to her left wrist. Appellant stated that she was not engaged in any form of horseplay when Fridd pushed her to the ground.

{¶ 5} Fridd testified that appellant was engaged in horseplay with Adams immediately before the accident, and further stated that appellant was swinging her arms like "a windmill" as she walked down the hallway toward the fax machine. (Tr. Vol. II, 169.) Although appellant stated that she had never done the windmill, Adams testified that appellant would frequently "do [the windmill] to" employees at Premierfirst. (Tr. Vol. II, 231-32.) Fridd stated that he put his hands out to protect himself from appellant's windmill, ultimately causing appellant to fall backwards. Appellant applied for and received workers' compensation benefits as a result of her injuries.

{¶ 6} The evidence demonstrated that horseplay was "an ongoing thing" at Premierfirst; instances of horseplay occurred "a few times a week at least." (Tr. Vol. II, 230, 13.) Appellant noted that the Premierfirst employees engaged in various acts of physical horseplay, explaining that "if we were passing each other in the hallway, you know, the guys would kind of like body bump us. Like just run into us kind of. * * * [O]r [appellant] could be on a phone with clients and they would come up behind [her] and yank [her] hair * * * or bear hugging." (Tr. Vol. II, 11-12.) Appellant admitted that she

engaged in some acts of horseplay, such as lowering a co-worker's chair, or "pull[ing] their arm hair, [or] pinch[ing] them." (Tr. Vol. II, 103.) She explained that there was a hallway near the bathrooms where "it was very common for people to wait outside the door when personnel were going to come out of the bathroom and we jump out and scare them." (Tr. Vol. II, 104-05.) Appellant stated that Fridd had jumped out and surprised her before when she was coming out of the bathroom. Appellant stated that it was not common for employees to push one another down.

{¶ 7} In contrast, Owens testified that the horseplay she witnessed at Premierfirst included "[p]unching, slugging, pushing type things. At some points wrestling to the ground." (Owens Depo., 15.) Although Owens told Fridd to stop engaging in horseplay, Fridd refused to stop. Appellant testified that Fridd initiated much of the horseplay which occurred at Premierfirst, and agreed that Fridd "allowed" horseplay "and allowed others to engage in it." (Tr. Vol. II, 125.) No Premierfirst employee was ever disciplined for engaging in horseplay at the office.

{¶ 8} Owens testified that she talked to Woods about the horseplay at Premierfirst. In response to Owens' comment about the horseplay, Woods said "[l]imited, * * * very limited things because he was in and out" of the office. (Owens Depo., 21-22.) Owens could not remember anything that Woods specifically said about horseplay in the office. Woods stated that no one had ever told him that horseplay was going on in the office.

{¶ 9} Although Woods owned Premierfirst, Woods agreed that he was an "absentee owner." (Tr. Vol. II, 210.) Woods had another full time job and rarely went to the Premierfirst office. Owens stated that in the three years she worked at Premierfirst, Woods had only been in the office "maybe five or six times tops." (Owens Depo., 21-22.)

{¶ 10} Woods explained that Fridd was the general manager at Premierfirst as he "managed about everything." (Tr. Vol. II, 195.) Fridd had the authority to hire and fire individuals, to oversee day-to-day operations, to report to payroll, to keep records of all business transactions, and to ensure that the company was compliant with state and federal guidelines. While Woods characterized Owens as a co-manager, he explained that she did not have the authority to hire or fire people, and that her job duties were essentially to assist Fridd in the execution of his managerial duties. Woods testified that

he did not condone horseplay in the office, and stated that horseplay was not part of Fridd's job description.

{¶ 11} Fridd filed a motion for summary judgment on March 16, 2009. The trial court granted the motion, finding Fridd was entitled to immunity under R.C. 4123.741. The court did not analyze whether Fridd was acting in the course of his employment at the time of the accident, as it found that "R.C. 4123.741 requires that the injured employee be in the course and scope of his/her employment, not the employee seeking immunity." (Apr. 28, 2009 Summary Judgment Decision, 4.)

{¶ 12} This court reversed the trial court's award of summary judgment. *Sanders v. Fridd*, 10th Dist. No. 09AP-596, 2010-Ohio-2321. We found the trial court's interpretation of the co-worker immunity law incorrect, as "R.C. 4123.741 requires that both the injured employee and the coemployee who allegedly caused the injury must have been in the service of the employer at the time of the injury for immunity to apply." *Id.* at ¶ 9, citing *Donnelly v. Herron*, 88 Ohio St.3d 425 (2000).

{¶ 13} On May 1, 2009, appellant voluntarily dismissed Premierfirst from the action without prejudice. On July 30, 2010, Fridd filed a second motion for summary judgment, asserting that he was entitled to immunity under R.C. 4123.741. On September 14, 2010, the court issued a decision and entry denying Fridd's second motion for summary judgment, noting that genuine issues of material fact existed regarding whether Premierfirst ratified and endorsed horseplay occurring at the office.

{¶ 14} The case proceeded to trial before a jury. At the conclusion of the trial, the jury returned a verdict in favor of Fridd.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Appellant appeals, assigning the following errors:

> 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INSTRUCTED THE JURY THAT PLAINTIFF-APPELLANT SANDERS COULD NOT RECOVER FROM COWORKER DEFENDANT-APPELLEE FRIDD AS A MATTER OF LAW IF PLAINTIFF-APPELLANT SANDERS WAS ALSO ENTITLED TO BENEFITS UNDER THE WORKER'S COMPENSATION STATUTE SINCE COWORKER IMMUNITY ONLY PROTECTS DEFENDANT-APPELLEE FRIDD IF THE JURY FINDS THAT HE WAS AN "EMPLOYEE" IN "THE SERVICE OF" HIS EMPLOYER.

2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE OF OTHER ACTS OF HORSEPLAY THAT WERE NOT HISTORICALLY OR CAUSALLY RELATED TO ACTS GIVING RISE TO PLAINTIFF-APPELLANT'S INJURIES.

3. BASED UPON THE TOTALITY OF THE EVIDENCE PRESENTED AT TRIAL, THE ERRONEOUS AND CONFLICTING JURY INSTRUCTIONS, AND THE WORDING AND ORDER OF THE JURY INTERROGATORIES, THE TRIAL COURT CREATED JURY CONFUSION AND REVERSIBLE ERROR.

## III. FIRST ASSIGNMENT OF ERROR—JURY INSTRUCTIONS

{¶ 16} Appellant's first assignment of error asserts the trial court erred in instructing the jury on the law regarding co-worker immunity.

{¶ 17} Ordinarily, a trial court should give requested jury instructions if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusions sought by the instructions. *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591 (1991). Jury instructions must be based on the evidence presented in the case. "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue." *Id.*

{¶ 18} Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the fact finder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. An instruction is proper if it adequately informs the jury of the law. *State v. Conway*, 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 24. With respect to jury instructions, it is incumbent upon the trial court to provide the jury a plain, distinct and unambiguous statement of the law applicable to the evidence presented by the parties to the trier of fact. *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985). A trial court may refuse to give an instruction that is redundant. *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph two of the syllabus.

{¶ 19} When a party challenges the jury instructions on appeal, an appellate court considers the jury charge as a whole and determines whether the charge misled the jury in

a manner that affected the complaining party's substantial rights. *Kokitka v. Ford Motor Co.,* 73 Ohio St.3d 89, 93 (1995); *Columbus Steel Castings Co. v. Alliance Castings Co., LLC,* 10th Dist. No. 11AP-351, 2011-Ohio-6826, ¶ 15. The decision to give or refuse a particular instruction is within the trial court's discretion, and an appellate court will not disturb that decision absent an abuse of discretion. *Id.* at ¶ 15; *Eastman v. Stanley Works,* 180 Ohio App.3d 844, 2009-Ohio-634, ¶ 49 (10th Dist.) The trial court can be found to have committed reversible error only where it can be found that the instructions given misled the jury. *Kokitka* at 93.

{¶ 20} Appellant asserts that various aspects of the trial court's co-worker immunity instruction were misstatements of law. The court's instruction on co-worker immunity, as a whole, instructed as follows:

### CO-WORKER IMMUNITY

As a general rule, a coworker is immune from liability for injuries caused to another coworker while in the course of and arising out of his employment so long as Defendant can establish that he was an "employee" as defined by the Ohio Workers' Compensation Act. "Employee" is defined by statute as "every person in the service of any person, firm or private corporation."

What is "in the service of" an employer? An employee who causes an injury on his employer's time and premises while engaged in horseplay, disconnected from his employment, is not in the service of his employer and does not qualify for statutory immunity unless his employer consents to or acquiesces in such horseplay or if he proves that he did not instigate the horseplay.

Defendant has the burden to prove he was "in the service of" his employer in this case. He must establish by a preponderance of the evidence, that his conduct arose from and was in the course of his employment.

Defendant, Ryan Fridd, claims he is entitled to fellow employee immunity pursuant to Ohio's Workers' Compensation Law. Workers' compensation statutes are to be liberally construed in favor of the employee.

Under Ohio's workers' compensation law, no employee of an employer is liable for any injury received by any other employee of such employer in the course of and arising out of the latter employee's employment if the injury is found to be compensable under the workers' compensation statutes.

Thus, a party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes and whose injury is found to be compensable thereunder is precluded from pursuing any claim against such co-employee.

In order for Mr. Fridd to be entitled to immunity, his actions must have occurred in the course of and arising out of his employment at Premierfirst Banc, LLC. He must have been in the service of Premierfirst Banc, LLL [sic] at the time of the accident.

An employee's actions occur in the course of and arises out of employment if the employee's actions followed as a natural incident of the work and as a result of exposure occasioned by the nature, conditions or surroundings of the employment.

An employee need not be actually performing work in order for his actions to arise in the course of his employment. When an employee diverts from the straight and narrow performance of his task, the diversion is not an abandonment of his responsibility and service to his employer unless his act is so diverted that its very character serves the relationship of employer and employee.

Generally, actions of an employee engaging in horseplay do not occur in the course and arise out of his employment. Nevertheless, where the employee is engaged in horseplay commonly carried on by employees with the knowledge and consent or acquiescence of the employer, his actions are considered to occur in the course of and arise out of his employment and he is entitled to immunity.

If you find that [appellant's] injuries were proximately caused by horseplay that was commonly carried on by Premierfirst employees with the knowledge and consent or acquiescence of Premierfirst Banc, LLC, then you must find for the Defendant Ryan Fridd.

A corporation cannot see or know anything except by the eyes and intelligence of its officers. A corporation can act only through its officers and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation.

If you find from the evidence that Gary Woods, the owner of Premierfirst Banc, LLC, assigned all of the managerial duties with respect to the corporation to his General Manager, Ryan Fridd the knowledge of Ryan Fridd with respect to "horseplay" is the knowledge of Premierfirst Banc, LLC.

Similarly, if you find that Mr. Fridd, pursuant to the authority granted by Mr. Woods, hired Tamara Owens as a manager. Then, Ms. Owens' knowledge with respect to horseplay is the knowledge of Premierfirst Banc, LLC.

An injury resulting from horseplay by fellow employees, instigated and engaged in by [appellant] while on duty, is not caused by or connected with [appellant's] employment within the purview of the Workmen's Compensation Act.

You are instructed that if Amy Sanders was engaged in horseplay at the time of her injury and if horseplay was not permitted, consented to or acquiesced by Premierfirst Banc, LLC, she would not have been eligible to receive workers' compensation benefits.

On the other hand, if Amy Sanders was engaged in horseplay at the time of her injury and if horseplay was permitted, consented to or acquiesced by Premierfirst Banc, LLC, she would be eligible to receive workers' compensation benefits.

(Jury Instructions, 7-10.)

{¶ 21} Viewing the jury instruction as a whole, it is a correct statement of Ohio co-worker immunity law. R.C. 4123.741 provides that:

No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury * * * received * * * by any other employee of such employer in the course of and arising out of the latter employee's employment, * * * on the condition that such injury, * * * is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.

{¶ 22} An "employee" under the workers' compensation statutes means "[e]very person in the service of any person, firm, or private corporation." R.C. 4123.01(A)(1)(b). Thus, a co-employee seeking immunity must be "in the service of" their employer at the time the injury to the other employee occurs. *Donnelly* at 428.

{¶ 23} An employee is in the service of their employer, and entitled to immunity under R.C. 4123.741, "only when the actionable conduct occurs 'in the course of, and arising out of,' the coemployee's employment, within the meaning of that phrase in the Workers' Compensation Act." *Id.* at syllabus. "The 'in the course of' requirement addresses the time, place, and circumstances of the injury, and the 'arising out of' requirement addresses the causal connection between the injury and the injured person's employment." *Maynard v. H.A.M. Landscaping, Inc.*, 166 Ohio App.3d 76, 2006-Ohio-1723, ¶ 22 (8th Dist.), citing *Fisher v. Mayfield*, 49 Ohio St.3d 275 (1990).

{¶ 24} "A party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes, and whose injury is found to be compensable thereunder is precluded from pursuing any additional common-law or statutory remedy against such co-employee." *Kaiser v. Strall*, 5 Ohio St.3d 91 (1983), syllabus. Thus, where the "Bureau of Workers' Compensation [finds that an] appellee's injuries were sustained in the course of her employment and paid her claim," the appellee is "precluded from pursuing a common-law remedy of negligence against her fellow employee." *Kelbey v. Hurley*, 94 Ohio App.3d 409, 414 (3d Dist.1994). *See also Kaiser* at 94 (noting that "[a]s the commission is the body cloaked with exclusive authority to compensate workers for work-related injuries, its determination, * * * that an injury was occasioned during the course of the claimant's employment must * * * be honored").

{¶ 25} *Kaiser*'s syllabus holding does not imply that, once an injured employee files for and receives workers' compensation, the employee is estopped from filing any other action on the claim. The syllabus of *Kaiser* makes clear that "in order for the party who has applied for and received workers' compensation benefits to be precluded from seeking common-law remedies against the tortfeasor, he must have been "injured as a result of a co- *employee's* negligent acts.' " (Emphasis sic.) *Caygill v. Jablonski*, 92 Ohio

App.3d 31, 34 (6th Dist.1994) (*Caygill II*). Thus, an injured employee "is not forced, by virtue of R.C. 4123.741, to elect between the remedies available in a civil action and those available under the workers' compensation statute if the tortfeasor is not a fellow employee." *Id.* *See also Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 99 (1984) (finding that R.C. 4123.741 does not preclude an employee from enforcing his common law remedies against his co-employee for "injuries which are received by a worker due to intentional misconduct"); *Walter v. Hartley*, 2d Dist. No. 97 CA 55 (Mar. 27, 1998), quoting *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 613 (1982) (R.C. 4123.741 does not preclude actions on intentional tort claims because 'the substance of an intentional tort claim is not an injury received 'in the course of and arising out of the [fellow] employee's employment' ").

{¶ 26} The "general rule" is "that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done independently of, and disconnected from, the performance of any duty of the employment." *Indus. Comm. v. Bankes*, 127 Ohio St. 517, 522 (1934). Exceptions to the general rule exist where "the employee who is injured through horseplay or fooling by other employees took no part in the fooling, but was attending to his duties," and "where [the employee] is injured by horseplay commonly carried on by the employees with the knowledge and consent or acquiescence of the employer." *Id.* *See also Kelley v. Ryan*, 12th Dist. No. CA2009-07-104, 2010-Ohio-1514, ¶ 8.

{¶ 27} Thus, "an employee who causes an injury on his employer's time and premises while engaged in 'horseplay,' disconnected from his employment, is not 'in the service of' his employer and does not qualify for statutory immunity under R.C. 4123.741, unless his employer consents to or acquiesces in such horseplay." *Caygill v. Jablonski*, 78 Ohio App.3d 807, 818 (6th Dist.1992) ("*Caygill I*"). In *Caygill I,* the evidence established that the appellant, Caygill, and defendant, Jablonski, were co-employees working for the City of Sylvania. Near the end of a work day, Jablonski became involved in a pick-up game of baseball with other employees; Caygill was not involved in the game. Caygill was injured when a shovel Jablonski was using as a bat slipped out of Jablonski's hand during his turn at bat. Caygill applied for and received workers' compensation benefits for his

injuries and subsequently filed a complaint against Jablonski based on common law negligence. Jablonski asserted that R.C. 4123.741 barred Caygill's negligence action.

{¶ 28} The evidence in *Caygill I* established that Jablonski and "others had played the game on several occasions, that his employer knew of such, that one supervisor had played in the past, and that no supervisor forbade the game." *Id.* at 818. On such evidence the appellate court, reviewing a summary judgment award, found a genuine issue of material fact regarding whether the employer had consented to or acquiesced in the playing of the game, "and, therefore, whether [Jablonski], at the time of injury, was an 'employee' entitled to immunity under R.C. 4123.741." *Id.*

{¶ 29} Appellant initially asserts that the court's instruction, providing that "a party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes and whose injury is found to be compensable thereunder is precluded from pursuing any claim against such co-employee," is a "confusing misstatement of Ohio law." (Appellant's brief, 3.) Appellant's contention lacks merit. This portion of the jury instruction is nearly a verbatim recitation of the *Kaiser* syllabus holding.

{¶ 30} Appellant next alleges that the court's instruction regarding imputed knowledge was improper. Appellant's counsel objected to the proposed imputed knowledge instruction at trial, asserting that it was "not appropriate and not applicable to the situation." (Tr. Vol. IV, 22.)

{¶ 31} The instruction was a correct statement of law. "Ohio has long recognized '[a] corporation cannot see or know anything except by the eyes and intelligence of its officers.' " *Orrenmaa v. CTI Audio, Inc.*, 11th Dist. No. 2007-A-0088, 2008-Ohio-4299, ¶ 110, quoting *Orme v. Baker*, 74 Ohio St. 337 (1906). "A corporation can act only through its officer and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation." *Id.*, citing *Arcanum Natl. Bank v. Hessler*, 69 Ohio St.2d 549, 557 (1982).

{¶ 32} The instruction was also appropriate given the evidence presented at trial. The evidence demonstrated that Premierfirst was a small business with Woods as the sole owner and shareholder. Woods agreed that even he "didn't have a title at Premierfirst." (Tr. Vol. II, 210.) Woods was not involved in the day-to-day operation of the business;

Fridd understood that Woods had "left the management of the business to" him. (Tr. Vol. II, 161.) Woods explained that Fridd was "[t]he only manager" at Premierfirst and agreed that Fridd was "the head of the food chain as far as the people on the job every day." (Tr. Vol. II, 210.) As general manager, Fridd "had authority to implement the policies concerning horseplay at Premierfirst," and Woods agreed that he left it "up to Ryan Fridd to determine what was appropriate when referring to horseplay at Premierfirst." (Tr. Vol. II, 214.)

{¶ 33} Although Fridd was not a corporate officer, Woods delegated complete managerial control over the office to Fridd. Accordingly, it was not error for the trial court to instruct the jury that Fridd's knowledge regarding the horseplay could be imputed to Premierfirst. *See Orme* at 347-55 (although the cashier of a bank was also on the board of directors, the court considered the fact that the board of directors "abandoned all supervision and control" over the bank and shifted "all, or at least a large portion of its authority and responsibility to [manage the bank to] the shoulders of the cashier," relevant to its holding that the cashier's knowledge of the insolvent condition of the bank should be imputed to the board of directors); *Kornhauser v. Natl. Sur. Co.*, 114 Ohio St. 24 (1926), syllabus (noting that "[o]ne who has exclusive possession and control of a position in a private corporation occupies such position"); *London & Lancashire Indem. Co. of Am. v. Fairbanks Steam Shovel Co.*, 112 Ohio St. 136, 150 (1925). Moreover, Woods specifically stated that Fridd had the authority to implement policies concerning horseplay at Premierfirst. *See Hallowell v. Cty. of Athens*, 4th Dist. No. 03CA29, 2004-Ohio-4257, ¶ 11 (noting that "[a]n employee's knowledge is imputed to his employer only if the employee obtained the knowledge while acting within the scope of his employment").

{¶ 34} Appellant asserts that the imputed knowledge instruction was improper as it drew "on the rationale and commensurate presumptions involved with determining the respondeat superior liability of a corporation." (Appellant's brief, 5.) Appellant complains that the instruction was improper as the court in *Donnelly* "specifically rejected the respondeat superior (scope of employment) test for determining co-worker immunity." (Appellant's brief, 6.)

{¶ 35} Appellant's contention regarding the respondeat superior doctrine is misplaced. The respondeat superior doctrine states generally that an employer or principal is vicariously liable for the torts of its employees or agents. *Faieta v. World Harvest Church*, 10th Dist. No. 08AP-527, 2008-Ohio-6959, ¶ 54. The imputed knowledge doctrine, in contrast, simply allows for the knowledge of certain individuals in a corporation to be imputed to the corporation, a creature of law which cannot itself hold any knowledge independent from the individuals who comprise the corporation.

{¶ 36} Appellant asserts that the imputed knowledge instruction was also improper because there was no evidence that Woods actually knew about the horseplay occurring at Premierfirst. However, the evidence in the record demonstrated that Owens informed Woods about the horseplay. Although Woods testified that no one had ever told him about the horseplay, the credibility of Woods' and Owens' statements was for the jury's determination.

{¶ 37} Lastly, appellant asserts that the final two paragraphs of the co-worker immunity instruction were misstatements of the law. Appellant's counsel objected to the two paragraphs, noting that appellant had filed the following proposed special jury instruction:

> An injury resulting from horseplay by fellow employees, instigated and engaged in by [appellant] while on duty, is not caused by or connected with [appellant's] employment within the purview of the Workmen's Compensation Act. *Ind. Comm. V. Bankes* (1934), 127 Ohio St. 517, *syllabus*, paragraph 3. It is undisputed that [appellant], Amy Sanders, received benefits from the Ohio Bureau of Workers' Compensation for injuries she sustained on February 28, 2006. Therefore, you are instructed that Amy Sanders did not instigate the horseplay that led to her injuries sustained in February 28, 2006.

(Appellant's Special Jury Instruction No. 1.)

{¶ 38} The court refused to give appellant's proposed instruction, stating it would not "instruct as a matter of law that [appellant] did not engage in horseplay." (Tr. Vol. IV, 24.) The evidence did not support appellant's proposed instruction. Although appellant did receive workers' compensation benefits as a result of her injury, whether she instigated or was engaged in horseplay at the time of her injury was a disputed fact.

{¶ 39} Appellant asserts that the final paragraphs of the instructions were contrary to the holding in *Bankes*, that an injury resulting from "sportive play by fellow employees, instigated and engaged in by the injured employee while on duty, is not caused by or connected with the workman's employment within the purview of the Workmen's Compensation Act." *Id.* at paragraph three of the syllabus. Appellant asserts that the last two paragraphs of the instructions are error, as they simply use the word "engaged" instead of the words "instigated and engaged," as the *Bankes* syllabus required. The third to last paragraph in the jury instructions on co-worker immunity properly instructed the jury that an injury resulting from horseplay "instigated and engaged in by [appellant] while on duty" would not be connected with appellant's employment. (Jury Instructions, 10.) Accordingly, the absence of the word "instigated" from the final two paragraphs of the instructions did not violate appellant's substantial rights, as the third to last paragraph correctly included the words instigated and engaged.

{¶ 40} Appellant further asserts that the final paragraphs of the co-worker immunity instruction did not allow the jury to consider whether appellant had or had not instigated the horseplay. The determinative issue in the case, however, was whether Fridd was immune from liability. Accordingly, the jury never had to consider whether appellant instigated or engaged in horseplay, as their focus was on Fridd's conduct.

{¶ 41} Based on the foregoing, appellant's first assignment of error is overruled.

## IV.  SECOND ASSIGNMENT OF ERROR—PRIOR ACTS

{¶ 42} Appellant's second assignment of error asserts the trial court erred by admitting evidence of prior acts of horseplay which were not related to the February 28, 2006 injury.

{¶ 43} On the day before trial, appellant's counsel made a motion in limine asking the court to "not allow evidence of prior acts" of horseplay which did not "have anything to do with the events that led up to this particular incident." (Tr. Vol. I., 6.) Fridd's counsel asserted that evidence of other acts of horseplay were necessary to demonstrate that Premierfirst had consented to or acquiesced in the horseplay which ultimately led to appellant's injuries. While appellant's counsel agreed that "prior conduct regarding pushing employees or waving arms as in a windmill fashion" was admissible, appellant's counsel asserted that any other acts of general horseplay were not admissible. (Tr. Vol. I,

8.) The court denied the motion, noting that Fridd "ha[d] a right to show circumstantially; in other words, with other activity that was ongoing throughout the history of the organization, that this type of activity was, * * * ratified or endorsed, that is, the horseplay." (Tr. Vol. I, 10-11.) Appellant's counsel's objected occasionally during the trial to evidence of prior acts of horseplay, and the court overruled appellant's objections by citing to its earlier ruling on the admissibility of such evidence.

{¶ 44} A motion in limine is a request " 'that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial.' " *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 82, quoting *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist.1991). Although appellant asserts that she did not make a motion in limine because she "did not file a motion in limine, [and] instead made an objection before the court on the record," appellant's verbal request to exclude the evidence of prior acts of horseplay, made prior to trial, was a motion in limine. (Appellant's Reply brief, 12-13.) *Compare State v. Deans*, 10th Dist. No. 98AP-1463 (Sept. 30, 1999) (noting that the appellant "made what was essentially an oral motion *in limine* to preclude the state from cross-examining Detective Eberhart" on certain matters). (Emphasis sic.)

{¶ 45} "[A] motion in limine is a preliminary ruling which must be renewed at trial or the argument made therein is waived for purposes of appeal." *State v. Smith*, 7th Dist. No. 11 MA 120, 2013-Ohio-756, ¶ 128. " 'The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper.' " *Gordon* at ¶ 82, quoting *Winston*. Thus, because a trial court's decision on a motion in limine is a ruling to admit or exclude evidence, our standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *Id.*

{¶ 46} Appellant asserts that it was error for the trial court to allow evidence of general acts of horseplay into the record because "every Ohio case that has ever dealt with the issue of co-worker immunity set forth in R.C. 4123.741 has focused only on the act that led to injury." (Appellant's brief, 12.) We agree that, for purposes of determining whether a co-worker is entitled to immunity under R.C. 4123.741, the relevant inquiry is whether

the co-worker's injury causing conduct occurred in the course of and arising out of the co-worker's employment.

{¶ 47} However, in co-worker immunity cases involving horseplay, the relevant inquiry becomes whether the employer consented to or acquiesced in the horseplay, thereby rendering the horseplay in the course of the co-worker's employment. In *Caygill I*, the court found a genuine issue of material fact regarding the employer's consent or acquiescence to the baseball game where the evidence established that Jablonski and others "had played the game on several occasions." *Id.* at 818. Thus, in R.C. 4123.741 cases involving horseplay, prior acts of horseplay are relevant to establish the employer's consent or acquiescence.

{¶ 48} Appellant concedes that evidence of prior similar acts such as pushing or surprise attacks were relevant and admissible, but asserts the trial court erred by admitting other dissimilar acts of horseplay. Appellant, Fridd, Adams, and Owens all testified that various acts of horseplay occurred at Premierfirst, including body bumps, punching, wrestling, pulling hair, pinching, and bear hugging, as well as pushing, doing the windmill, and jumping out to scare other employees. The dissimilar acts of horseplay in the instant case were relevant, as they demonstrated the extent of Premierfirst's acquiescence to acts of horseplay and provided the jury with background information regarding the atmosphere at Premierfirst. *Compare State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 13, quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975) (observing that under Evid.R. 404(B) "the admission of certain other-acts evidence" is allowed where the "other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment' and are 'inextricably related' to the crime"). Moreover, appellant has failed to explain how the evidence of the dissimilar acts of horseplay prejudiced her case. The trial court properly admitted all the evidence regarding prior acts of horseplay.

{¶ 49} Based on the foregoing, appellant's second assignment of error is overruled.

## V. THIRD ASSIGNMENT OF ERROR—TOTALITY OF THE EVIDENCE

{¶ 50} Appellant's third assignment of error asserts that the totality of the evidence presented at trial, coupled with the conflicting jury instructions and the wording and order of the jury interrogatories, created jury confusion and reversible error. Under this

assignment of error, appellant expressly argues the merits of the two previous assignments of error. Appellant's contentions lack merit for the reasons stated in the preceding paragraphs.

{¶ 51} Appellant also asserts that the interrogatories provided to the jury were wrong, misleading, and confusing. Both appellant and Fridd submitted proposed jury interrogatories to the court. Appellant's proposed interrogatories asked the jury if Fridd's negligence was a proximate cause of appellant's injury, whether Fridd established that he was entitled to immunity, and what amount the jury should award as damages. The court ultimately provided the jury with Fridd's proposed interrogatories, which similarly asked the jury to determine whether Fridd was immune, whether Fridd was negligent, and what damages should be awarded.

{¶ 52} Civ.R. 49(B) allows for the use of interrogatories in conjunction with the general verdict. The rule provides, in pertinent part, that:

> The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

{¶ 53} Civ.R. 49(B) "does not require that the ' "* * * trial judge [act as] a mere conduit who must submit all interrogatories counsel may propose. Authority is still vested in the judge to control the substance and form of the questions." ' " *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 107 (1992), quoting *Ragone v. Vitali & Beltrami, Jr., Inc.*, 42 Ohio St.2d 161, 165-66 (1975). A trial court also retains the discretion to reject submitted interrogatories where the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable. *Id.* at 107-08.

{¶ 54} "Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." *Id.* at 107. "The essential purpose to be served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its

assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.,* 28 Ohio St.3d 333, 336-37 (1986), citing *Davison v. Flowers,* 123 Ohio St. 89 (1930). *See also Reeves v. Healy,* 192 Ohio App.3d 769, 2011-Ohio-1487 (10th Dist.).

{¶ 55} The first interrogatory proposed by Fridd, and submitted to the jury, asked the following question: "Did the Defendant prove by a preponderance of the evidence that horseplay commonly carried on by employees of Premierfirst Banc, LLC, with the knowledge and consent or acquiescence of Premierfirst Banc, LLC." (Jury Interrogatory, 1.) The court explained that it was providing Fridd's proposed interrogatory to the jury as it found that the "primary issue is whether or not horseplay was commonly carried on by employees at Premierfirst Banc with the knowledge and consent or acquiescence of Premierfirst Banc. * * * That's * * * the very first things they have to figure out." (Tr. Vol. IV, 43.) The jury answered the first interrogatory affirmatively and entered a general verdict in Fridd's favor.

{¶ 56} Pursuant to *Caygill I* and *Bankes*, the first interrogatory addressed the determinative issue in the case regarding whether Premierfirst consented or acquiesced to horseplay occurring at Premierfirst. The jury's affirmative answer to the interrogatory evidenced the jury's determination that Fridd was entitled to immunity, as his horseplay conduct occurred in the course of his employment. Appellant asserts the interrogatory is confusing. Although the interrogatory could have been worded differently, the interrogatory was not confusing or misleading, as it clearly asked the jury to determine whether Premierfirst had consented to or acquiesced in horseplay occurring between Premierfirst employees.

{¶ 57} Appellant's interrogatories were largely redundant of Fridd's interrogatories. As such, the trial court did not abuse its discretion in rejecting appellant 's proposed interrogatories.

{¶ 58} Appellant asserts that the jury's question to the court during deliberations demonstrates that the jury was confused. The jury submitted the following question to the court during deliberations: "Do we start our deliberation with Interrogatory No. 1, both parties refer to immunity as the first question we answer." (Tr. Vol. IV, 107.) The court answered the question by simply writing "yes" on the question and returning it to

the jury.  We do not share in appellant's concern over the jury's question.  The question simply asked if the jurors were to start with the first interrogatory, and the trial court correctly answered yes.

{¶ 59}  Appellant's assigned error asserts that the totality of the evidence presented at trial does not support the jury's verdict.  The evidence at trial demonstrated that Fridd readily permitted horseplay to occur at Premierfirst.  Owens informed Woods about the horseplay occurring at Premierfirst and Woods took no action in response to such information.  The evidence further demonstrated that appellant had sought and received workers' compensation benefits for her injury.  Accordingly, the evidence established that Premierfirst consented to or acquiesced in horseplay occurring at the office, rendering Fridd's horseplay within the course of his employment and entitling Fridd to immunity under R.C. 4123.741.  The totality of the evidence supported the jury's verdict.

{¶ 60}  Based on the foregoing, appellant's third assignment of error is overruled

## VI.    CONCLUSION

{¶ 61}  Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

——————————————